have been submitted on the briefs. Zhao v. Yee, Lopez Velasquez v. Sessions, U.S. v. Henderson, U.S. v. McAtee, U.S. v. Lakey, Evans v. USF Redaway, and Benefil v. Williams, Northwest Pipeline, are all submitted on the briefs. The first argued case is Wolff and I hope I pronounce his right, Padja? Okay, that's the first case. Counsel? Thank you. So, Cosette Trancafe for Plaintiff Appellant Stephen Wolff. May it please the Court, we're here today on a fairly straightforward issue of summary judgment, specifically whether the client's favor or not. I will note that the clerk has asked us to address the Alt v. DelVar case, and I will do that in a couple of minutes, but first because the decision glosses over some key facts, I want, as long as the Court will allow, to discuss the evidence in the record in a bit of detail. As a very a door to the bistro side, which was one side of the business, and then she then used an interior doorway to move from the bistro side to the formal dining room side. There was a single step down at that doorway. She fell down that step, she hit her head, and she sustained head injuries that led to her death a couple of months later. So the defendants have identified a former employee who greeted Mrs. Wolff when she entered the bistro side. That employee purportedly warned her about the step, and I say purportedly because whether or not the warning was given is an issue of fact, which I can discuss if the Court is interested in, but for, because of the time limitation, I'm going to assume that the warning was given and just discuss the limitations of the warning. So the district court decided Counsel, Counsel, why would you assume the warning is, was given? I mean, we don't really, isn't that an issue of fact for the jury here? I mean, I understand the district court assumed that the warning was given taking Mr. Williams' statement, written statement and deposition testimony, I guess crediting that testimony, but isn't there contrary evidence? Yes. Thank you, Your Honor. So what I meant to say was, yes, the, whether the warning was given at all is an issue of fact. The, on our side, we have Mrs. Wolff's statement to the paramedics that she didn't see the step that she fell over, and this is, this is the only available evidence from her point of view, because she fell into, she lost consciousness right after her fall, and then she wasn't able to give any more information after that and before her death. So she, she told the paramedics that she didn't see the step, and from that we can infer that she wasn't looking for the step at the location it was, and from that we can infer that perhaps she wasn't actually warned about the step. So yes, whether or not the warning was given is an issue of fact, which I believe the jury should have been allowed to address. But also, even assuming that the warning was given, whether that warning was adequate as a matter of law to discharge the defendant's duty to Mrs. Wolff is also an issue that should have been submitted to the jury. Let me ask you this. I think, I mean, we can certainly assume that she didn't see the step. So even if she hadn't said that, I think we can assume that she didn't see it, because had she seen it, we probably wouldn't be in the situation that we're in now. That being the case, can someone ever get summary judgment under your view on a case involving a step, for example? Are there cases where you could get summary judgment? Well, if you, let's say the step was well illuminated, it was in a location where you would expect it to be, perhaps there was signage, you could get summary judgment. And under the of harm, which is sort of the baseline risk that needs to be posed for a premise of liability, the courts have held that you need to have more than a single step. So it's a single step plus some collateral conditions. And in this case, we had several collateral conditions. The parties have disagreed over what should be made of those collateral conditions. So the district court correctly held that that issue is an issue for a jury. But let's say you had a single step and it was well lit, there was nothing slippery, you expected the step to be there, then yes, that is a situation that you could get summary judgment on. Because I guess what I'm trying to understand is that summary judgment, it is in the books, right? Rule 56 is there, and there are going to be cases where it should be applied. And I'm just trying to understand if it wouldn't be applied in this case. Again, we can assume she didn't see the step, but to me the statement is not that helpful because I think it's if she couldn't speak at all, we can assume she didn't see the step. If that's all it takes is that there's a doubt of whether she saw it or not and you get past summary judgment, then I'm not sure where you would ever get summary judgment in a step case. So I don't want you to argue against your own case, but help me feel comfortable going your way by understanding we can still go your way and not hold, you could never get summary judgment in a step case. What's different about your case? Well, here the step was concealed because of, not absolutely concealed, but not readily apparent because of the collateral conditions. So from the photos you can see that the flooring material changed at the location of the step on the bistro side, which was also the more well-lit side of the business. The flooring was black and white tile. And then on the formal dining room side, the flooring was dark carpet. And because of the way, and because it was a step down, when you look at it, it looks sort of like it's just the change in flooring and not actually an elevation change. And so we have that, the flooring material, and then we have the fact that it was more brightly lit from the area she was coming from and more which similarly sort of obscured the step. There were no other, no signage, no handrail sort of at an incline that would demonstrate that she needed to be aware of that. So those are, that is what precludes summary judgment in this case. Is it correct that the rope that was across the doorway there or the you had, the step wasn't right there, you had to walk a few more steps into a passageway and then there was a step? It was, as I understand it, the step was actually at the doorway and then the rope was right across it. And that is one of the issues I wanted to discuss is that, let's assume that Mr. Williams, the employee, gave the warning. She asked to use the doorway and he said, you can use it, but there is a step. And then he walked her over to the doorway and he undid the rope, but at that point he didn't say, watch your step, or here's the step I mentioned. And he didn't say anything else that would indicate that like that was the point where the step was. So it's just this case seems odd to me because Mrs. Wilk was on a walk, was using a walker, and if Williams had in fact like had the concern enough to warn her, you would think he might have helped her. I mean, given that she had a walker, that he would have been right there, it was almost an obviously inherently dangerous situation given that the step was, it was actually six inches, was it? Like it was quite a, I mean, quite a bit to go with the walker. I have never actually used a walker, but I've seen other people use them, and it seems like that's a big distance for a walker to go. And that was exactly the expert, our safety experts opinion, and I'll try to wrap that very quickly into the discussion of Alt V Del Mar. So that case clarified, to the extent it needed to be clarified, the two different levels of duty a land possessor could have, the unreasonable risk of harm, which we sort of discussed, and then an unreasonably dangerous condition, which in this case, because of Mrs. Wilk's apparent mobility issues that Mr. Williams was aware of, the step also constituted an unreasonable unreasonably dangerous condition, which means that Mr. Williams had a duty to do more than just warn. And as Your Honor has mentioned, and as our expert opined, that would involve either, you know, actually prohibiting Mrs. Wilk from using that doorway or providing some physical assistance down the step. And the district court just did not address that expert opinion in the summary judgment order. And I am — I'm sensitive, however, for an employee to countermand a customer who says, I can — I can do this. And, you know, she might be sensitive about being labeled as disabled. And I could see how the employee would have some maybe hesitation about that, but that and whether that was reasonable under the circumstances is really a question that the jury should have been allowed to address. And with that, I'm out of time. All right. What we'll do is we'll give you one minute for rebuttal, okay? Thank you. Sure. May it please the Court, Ryan McClellan for the appellees. As mentioned by my colleague, Alt was a case that was asked to be discussed by the parties, so I will sort of lead off with that. But obviously, if there's any questions or issues, feel free to chime in whenever. I view Alt as having a somewhat limited involvement or impact on the case in front of you. Oregon law is somewhat confusing in terms of the terms unreasonable risk of harm and unreasonably dangerous condition as they're used in the premises liability context. Alt clarifies that those two concepts are distinct and carry with them different standards of care for the possessors to satisfy their duties. So to that extent, Alt clarifies that unreasonable risks of harm are things that can be warned against and or eliminated against and that will satisfy the possessor's duty, whereas if a condition is an unreasonable risk of danger, those are things that must be eliminated and a warning is insufficient. The case we have in front of us, the issue has already been, I think, decided that this is a case of unreasonable risk of harm, and I don't believe there's any arguments that this was an unreasonably dangerous condition where that a warning would be insufficient. So with that in mind, the Alt decision found that the step before them at issue of the curb was, as a matter of law, not an unreasonably dangerous condition. It went on to then hold the cases of, you know, Wolsten, Wilk, et cetera, stood for that proposition and remained good law under Oregon premises liability law. A couple of points that were raised in the opening segment here that I did want to just hit on. The location of the rope was a question that was brought up. That was at the precise location of the threshold and, therefore, the step down. So not only was there a verbal warning given to Ms. Wolfe in which she exchanged conversations with Mr. Williams and acknowledged that she could handle the step, there was also visual cues, including, probably most importantly, a big velvet rope there that had to be removed. Yes? I have a question. You say not only was a verbal warning given, but isn't Mr. Williams' credibility in play here, given that right after the incident he was told by his employer to write everything down, everything that happened down, and yet that statement has much less detail than his deposition testimony, which was four years later, where he went into a lot more detail about what he had done. And at the time of the first statement, he was told to record everything that happened. Yet, obviously, if we believe, credit his deposition testimony, he didn't do that. I think that there is some differences between the statement and his deposition testimony, but I would submit that those differences are to be expected when you have a post-accident report versus a four-hour deposition. So, obviously, there are a lot of additional details included in that deposition. But if you look, I think- Counsel, wouldn't you expect more detail when you're told for the contemporaneous report and not for a testimony four years later? I would suspect that a person who is not perhaps savvy in litigation or lawsuits or things like that has a lot of basic facts as they know them, which is included in the report after the accident. And then when you get three or four lawyers asking questions for several hours, that's where the additional information would come from. A lot of those things may certainly just have not come to mind about that. I think, however, if you look at the statement, the substance of the statement and the substance of the deposition, they are, in fact, very consistent in terms of the warning itself. And, again, there are more additional details included in the deposition, but there are no inconsistencies there that one would contradict one another. And in that statement more broadly, there is no contradiction or reason to contradict Mr. Williams or reason to question Mr. Williams' statements in terms of the veracity of his truth or that he is- I would take issue with that because this is a man, I will say he's a young man, I don't know. But he's an employee, probably works for this company. And we all know that we want to-we don't want to get in trouble. So isn't his credibility at issue? Maybe he didn't say it the way he claims four years later he explained the problem to the lady. Well, Your Honor, I would point out that the deposition that was several years later, he was no longer employed. There was no risk or inherent bias that would be associated there. But just the concept that a witness might be biased because of their employment situation or something along those lines, I would submit is not sufficient in order to raise an inference that that testimony should not be accepted. I would submit that there must be something else in there in order to question his credibility. And as we talked about in some of the briefing, the question is, well, is there enough in the statement made by Ms. Wolf to the paramedic that she didn't see the step? Is that sufficient in order to call into question Mr. Williams' testimony? And I would submit to you, as outlined in our brief, that there's a requirement of a logical probability, a connection between the two things. And the fact that she did not see the step does not have any logical probability or connection to the fact of whether a warning was given or not. One could imagine a scenario. Counsel, may I ask? So I take issue with that last statement you made because isn't it fair? I mean, I agree with Judge Owens that the statement is rather unnecessary to the analysis because it's clear she didn't see the step. And the fact that she didn't see the step, doesn't that give rise to at least one reasonable inference that she wasn't warned about the step? Otherwise, she would have been looking for it and could have quite likely seen it, had it been all the other things lit up or whatever. Well, Your Honor, I would say that at best that is a possibility but not a probability. And in order for a reasonable inference to attach, it has to be a logical probability. There has to be a probative value associated with those things. And so it is possible, I would submit, that if she didn't see that one possible conclusion or inference that could be made, is that she wasn't warned of it. But is it enough to get it beyond possible to probable? Well, wait. Is that Oregon law? Because it's not Federal law. Would a reasonable jury find that because she wasn't warned or wasn't told the step where it was or whatever the jury decides, could they find that? Why not let this case go to the jury? Because there is no evidentiary basis to discount Mr. Williams' testimony on his warning. The only evidence we have is Ms. Wolfe's statement that she didn't see the step. But, again, I would submit there's no connection there to whether a warning was or did not happen. One could imagine a scenario where a person runs a stop sign and then tells the police officer, I didn't see the stop sign. That's not evidence that the stop sign wasn't there. That's evidence that the person didn't see the stop sign. Perhaps that's evidence that the person wasn't paying proper attention. But we can't allow this to go to the jury, because for the very reason you raised there, there is not that logical connection between those two concepts, and the jury would be merely speculating as to whether there was a warning given or countering that issue. And the evidence in this case does not support that. The only other comment I wanted to make, unless, of course, there are other questions, is there was some issue about, well, Ms. Wolfe was using a walker at the time. And I wanted to reiterate two points on that. I believe that Oregon law is very clear that the duty that a possessor has under these circumstances is to either eliminate the risk or to warn about it. There is no heightened duty for somebody who may have certain physical disabilities or anything along those lines. So the duty was discharged when the warning was adequate and specific to the condition at issue. Counsel, that's what I was going to ask you. But the warning has to be adequate, right? That is correct. That's part of Oregon law. Under Nelson v. Nelson. Right. Isn't there a question of fact here as to whether or not the warning was adequate, given the circumstances? I would submit no. I think if you look at the Nelson v. Nelson case, the question was whether – watch out for the staff or something along those lines. Heads up was the warning. And here we have a much more detailed and specific warning regarding the step is back there. It's a big step. There's a rope across it. And, in fact, Mr. Williams offered an alternative means and went back with her, offered his assistance if she wanted help down the step itself, which she declined. Where is that in the record, the offer of assistance and all of that? That's in Mr. Williams' deposition testimony, which I don't have off the top of my head, but it is included in the record. Okay. But that was not in his original statement, was it? That's – I don't believe so. I would have to check that, but I don't believe so. Yeah. And with that, I'm out of time. Thank you very much, counsel. Thank you very much, Your Honor. One minute. Very briefly. So the evidence in the record about the offer to assist was that Mr. Williams escorted her to the door, undid the rope, and then said, please let me know if I can do anything else to assist you. He didn't offer to assist her actually down the step. Referring to the Nelson v. Nelson case and whether Mr. Williams needed to take into account Mrs. Wolfe's disability, the Nelson case did note that the plaintiff there had a vision impairment, and so the particular characteristics of the plaintiff are relevant to both the adequacy of the warning and whether the risk was an unreasonably dangerous condition in which something more than a warning was required. And just to touch on that, the court held, the district court held that there was no evidence in the record that the step was an unreasonably dangerous condition, but the evidence in the record supporting that was the expert opinion, the expert witness's opinion that she could not encounter the step with safety, even if she'd known where it was, and the court did not address that expert opinion. Thank you very much, counsel. Thank you both for your argument in briefing this case. This matter is submitted. We'll call the next case on the calendar today, which is United States v. Little Dog.
judges: Wardlaw, Owens, Lefkow